AMALGAMATED MEAT CUTTERS & BUTCHER
WORKMEN OF NORTH AMERICA, AFL-CIO,
*v.* NATIONAL LABOR RELATIONS
BOARD ET AL.

No. 40.   Argued November 14, 1956.—Decided December 10, 1956.

*Harold I. Cammer* argued the cause and filed a brief for petitioner.

*Theophil C. Kammholz* argued the cause for the National Labor Relations Board, respondent.   With him on the brief were *Solicitor General Rankin, Dominick L. Manoli* and *Norton J. Come.*

*Judson Harwood* argued the cause for the Lannom Manufacturing Co., respondent.   With him on the brief was *Cecil Sims.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This is a companion case to *Leedom* v. *International Union, ante,* p. 145, decided this day.   International Fur and Leather Workers Union [1] filed a charge with the National Labor Relations Board alleging that respondent Lannom Mfg. Co. had interfered with the rights of its employees guaranteed by the Act.   This charge was filed

---

[1] In February 1955 this union merged with Amalgamated Meat Cutters & Butcher Workers of North America, petitioner in this case.

in April 1951. A complaint was issued based on the charges in February 1952. At the hearing, Lannom sought to prove that certain § 9 (h) affidavits filed by officers of the union were false. The trial examiner ruled, in accordance with the Board's practice, that that issue could not be litigated in the proceeding. The trial examiner recommended that an appropriate remedial order issue to correct the unfair labor practice which he found to exist. The Board in general sustained the trial examiner and issued a remedial order against Lannom, 103 N. L. R. B. 847. Prior to this order, the Board had been enjoined from taking administrative action requiring the union's officers to reaffirm their § 9 (h) affidavits. *Farmer* v. *United Electrical Workers,* 93 U. S. App. D. C. 178, 211 F. 2d 36. Accordingly the Board ruled, "We are administratively satisfied that the Union was in compliance with Section 9 (h) at all times relevant hereto." 103 N. L. R. B., at 847, n. 2.

In August 1953 an indictment was returned against Ben Gold, an officer of the union, charging that the § 9 (h) affidavit which he filed with the Board on August 30, 1950, was false. In 1954 Gold was convicted for that offense.[2] Thereafter, the Board ordered the union to show cause why its compliance status under the Act should not be altered, unless Gold were removed from office. The union re-elected Gold as its president. Shortly thereafter the Board declared the union out of compliance with § 9 (h). 108 N. L. R. B. 1190, 1191. The union then obtained from the District Court for the District of Columbia a preliminary injunction enjoining the Board from altering or restricting the union's compliance status by reason of Gold's conviction. The Court of Ap-

---

[2] The judgment of conviction was affirmed by an equally divided Court of Appeals, sitting *en banc. Gold* v. *United States,* 99 U. S. App. D. C. 136, 237 F. 2d 764. We granted certiorari on October 8, 1956. 352 U. S. 819.

peals affirmed. *Farmer* v. *International Fur & Leather Workers Union,* 95 U. S. App. D. C. 308, 221 F. 2d 862.

The Board sought a stay of the preliminary injunction pending decision by the Court of Appeals in the *Farmer* case. When the stay was denied, the Board petitioned the court below, pursuant to § 10 (e) of the Act, for enforcement of the unfair labor practice order. Respondent Lannom Mfg. Co. moved for dismissal of the enforcement petition on the grounds of Gold's conviction for false filing under § 9 (h). The union intervened and opposed the motion to dismiss.

The court below granted the motion to dismiss, holding that, since the falsity of the affidavit had been proved, the requirements of § 9 (h) had not been met and no benefits should be accorded the union. We granted certiorari. 351 U. S. 905.

As noted, the complaint in the unfair labor practice proceeding was issued in February 1952, more than twelve months after the affidavit of August 30, 1950. Section 9 (h) provides that no investigation shall be made or complaint issued on behalf of a union unless there is on file with the Board a non-Communist affidavit of each officer "executed contemporaneously or within the preceding twelve-month period." There was no charge against Gold for filing a false affidavit in 1951. The Court of Appeals met that difficulty by presuming that a person who was a Communist in 1950 continued as such through 1951 and through the critical date of February 1952, in absence of evidence showing a change in the factual situation.[3]   226 F. 2d 194, 198–199.

---

[3] It was on this phase of the case that Judge Stewart dissented:

"A jury has found that in 1950 Gold was both a Communist and a liar, to put it bluntly. Yet to indulge in the presumption that he was therefore guilty of committing a criminal offense a year later in filing the 1951 affidavit is further than I can go on the record before us."   226 F. 2d, at 200.

The petitioner has also urged that Gold's conviction for filing a false affidavit could form no basis for holding the union in decompliance prior to the affirmance of Gold's conviction on appeal. At the time of the decision below, Gold's appeal was pending in the Court of Appeals for the District of Columbia. As noted,[4] we have granted certiorari to review the affirmance of his conviction.

For the reasons stated in *Leedom* v. *International Union, ante,* p. 145, we conclude that the sole sanction for the filing of a false affidavit under § 9 (h) is the criminal penalty imposed on the officer who files a false affidavit, not decompliance of the union nor the withholding of the benefits of the Act that are granted once the specified officers file their § 9 (h) affidavits. Having so concluded, we find it unnecessary to reach the collateral phases of this controversy.

*Reversed.*

MR. JUSTICE FRANKFURTER, concurring.

I agree that decompliance of the union is not a sanction authorized by § 9 (h). But this case presents another consideration that cannot be overlooked in the due administration of justice and that, standing alone, would lead me to reverse the judgment of the Court of Appeals. As stated below in the dissenting opinion of Judge Stewart:

"A court of competent jurisdiction has found that Gold's affidavit of August 30, 1950, was false. The critical date as to compliance with § 9 (h) of the National Labor Relations Act as amended was the date of issuance of the Board's complaint. N. L. R. B. v. Dant, 344 U. S. 375 . . . . If the complaint had issued during the twelve month period while this false affidavit was in effect, the question before us would be clear cut. That, however, is not the case.

---

[4] Note 2, *supra.*

"In August of 1951 Gold filed a new non-Communist affidavit, and it was during the effective period of that affidavit that the complaint in this case issued. No court has found that affidavit to be false. It is true that the Board found in 1954 that the Union was not at that time in compliance with § 9 (h). Assuming the Board had power to make such a finding, and assuming further that it be considered a finding that the 1951 affidavit was false, it must, I should think, be supported, like any Board finding, by substantial evidence, considering the record as a whole. We have no such record before us. Indeed, it appears that the question of the truth or falsity of the 1951 affidavit has never been heard on the merits. [Footnote omitted.]

.        .        .        .        .

"A jury has found that in 1950 Gold was both a Communist and a liar, to put it bluntly. Yet to indulge in the presumption that he was therefore guilty of committing a criminal offense a year later in filing the 1951 affidavit is further than I can go on the record before us." 226 F. 2d 194, 199–200.